# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **J.T. and K.C.**

**No. 18-0353** (Mercer County 17-JA-033-WS and 17-JA-034-WS)

## MEMORANDUM DECISION

Petitioner Father R.C., by counsel Gerald R. Linkous, appeals the Circuit Court of Mercer County's May 18, 2018, order terminating his parental, custodial, and guardianship rights to J.T. and K.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), John Earl Williams Jr., filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental, custodial, and guardianship rights when less-restrictive alternatives were available.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2017, the DHHR filed a child abuse and neglect petition against petitioner. The DHHR reported that Child Protective Services ("CPS") became involved with petitioner after receiving a referral in August of 2016 that the children were stealing from supermarkets and wearing the same clothes for "months at a time." Subsequent referrals indicated that petitioner was violent towards K.C. and consumed the children's medication. A CPS worker conducted an investigation into the referrals, confirmed these incidents, and initiated a safety plan. However, petitioner failed to comply with the safety plan as he tested positive for controlled substances, failed to take the children for counseling following the death of their mother, failed to send the children to school, and failed to follow through with a rehabilitation program for his drug use.

The DHHR filed an amended petition in March of 2017, alleging that the children were living in deplorable conditions and unsuitably supervised. Specifically, petitioner and the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

children had been evicted from their home, but continued to remain there without running water. When questioned, petitioner admitted that they continued to live in that home and had no plans for moving. The children further reported that petitioner often left them at home alone for several hours and that they felt afraid when they were alone.

In April of 2017, the circuit court held an adjudicatory hearing wherein petitioner stipulated to the allegations contained in the petition. The circuit court accepted petitioner's stipulation, adjudicated him as an abusing parent, and granted him a post-adjudicatory improvement period. As part of the terms and conditions, petitioner was required to participate in parenting and adult life skills classes, refrain from abusing controlled substances, submit to random drug screens, and undergo a psychological evaluation.

Petitioner actively participated in his post-adjudicatory improvement period for several months such that it was continued and the children were placed back in his care. However, the DHHR learned that petitioner allowed his girlfriend, who had her parental rights to her own child involuntarily terminated, to live in the home in the presence of petitioner's children. Petitioner agreed not to allow his girlfriend around the children and his post-adjudicatory improvement period was extended.

According to the guardian, in November of 2017, after school officials contacted the DHHR with concerns about the children, they were removed from petitioner's care. The school officials reported that the children were hungry and that petitioner withheld food from them as punishment. Further, it was reported that the children wore the same clothes for a week at a time and that petitioner's girlfriend was still living in the home with them. A multidisciplinary team ("MDT") meeting was held and the members agreed that petitioner needed to address his mental health issues by attending individualized counseling. Petitioner was thereafter granted weekend visitation with the children.

The guardian reported that, in December of 2017, petitioner's visitation with the children was suspended after he expressed violent ideations and his girlfriend was again found in the home. The circuit court held a review hearing in January of 2018 and was advised that petitioner had stopped cooperating with services and failed to initiate individualized counseling. Thereafter, an MDT meeting was held in February of 2018, at which the members reported that petitioner continued to allow his girlfriend in his home, refused to submit to a drug screen, and had not initiated individualized counseling.

In May of 2018, the circuit court held a dispositional hearing. Petitioner failed to attend but was represented by counsel, and the circuit court noted that petitioner failed to attend two prior dispositional hearings which were continued to allow him to be present. As such, the circuit court proceeded to hear evidence. A CPS worker testified that petitioner initially complied with services, but thereafter failed to attend adult life skills and parenting classes, submit to random drug screens, or complete an intake for individualized counseling. Of forty-one attempted drug screens, petitioner submitted to eleven. Further, petitioner continued to allow the girlfriend to live in the home, in violation of the DHHR's directives and despite her history of a prior involuntary termination of parental rights. Two service providers testified that they attempted to contact petitioner on multiple occasions, but he failed to respond. The children's maternal uncle

testified that he wanted to adopt the children and believed petitioner would become violent if his parental rights were terminated. Ultimately, the circuit court determined that petitioner had been granted a family case plan aimed at addressing his mental health, substance abuse, and parenting issues, but that he was uncooperative for at least half of his improvement period. The circuit court further found that termination of petitioner's parental, custodial, and guardianship rights to the children was in their best interests. It is from the May 18, 2018, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights when less-restrictive alternatives existed. Petitioner alleges that because testimony at the dispositional hearing established that he had a strong bond with the children and they were placed with a relative, the circuit court should have ordered a less-restrictive alternative such as termination of only his custodial rights. We disagree.

Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) sets forth that a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical,

---

[2]The mother of the children is deceased. J.T.'s father was unknown during the proceedings below. The children were placed in a relative's home with a permanency plan of adoption therein.

mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child. . . .

Here, the record demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future due to his failure to follow through with his family case plan. Petitioner's case plan was designed to address his problems with substance abuse, parenting, and mental health issues through services such as parenting and adult life skills, random drug screens, and individualized counseling. After initially complying with services, petitioner completely failed to finish any aspect of his case plan. Petitioner failed to submit to drug screens after November of 2017, only submitting to eleven out of forty-one attempted drug screens, and never completed an intake for individualized counseling. Further, petitioner was instructed not to allow his girlfriend around the children due to the prior involuntary termination of parental rights to her own child, but he continually allowed her in the home with the children and attempted to hide her presence from CPS, leading to the children's removal from his care. The record demonstrates that petitioner ceased participating in the proceedings and the circuit court twice continued the dispositional hearing due to his absence. Petitioner failed to attend the third dispositional hearing and the circuit court continued in his absence due to his refusal to participate. Therefore, given petitioner's continued failure to comply with the terms of his family case plan, we find that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future and that termination was necessary for the children's welfare.

To the extent that petitioner argues he should have been granted a less-restrictive alternative to termination of his parental rights, we have held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). As there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected by petitioner, we find that he is entitled to no relief in this regard.

We further note that because the status of J.T.'s father's parental rights is unknown, the circuit court must be mindful of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as

to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has held that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va. Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, we note that "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 18, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: November 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment